Okay, it looks like counsel are ready. Our first case is 25-5071, United States v. Buzzard. Mr. Truskoski. Yes, may it please the court, I am Ryan Truskoski, and I represent the appellant, James Buzzard. This is a unique case of ineffective assistance of- Pull the microphone up a little bit. Thank you. This is a unique case of ineffective assistance of counsel that has been fully litigated and preserved for direct appeal. As the court knows, the defendant has an unequivocal right to the effective assistance of counsel during the plea bargaining process, and that right was violated in this case. So, the original plea offer to the defendant was to section 924-0, and- Before we move to the nitty gritty, our usual practice is not to entertain an ineffective assistance claim until collateral proceedings. What counsels in this case to deviate from that ordinary practice? Well, the whole July 13th hearing was about ineffective assistance of counsel, and all the two trial court orders were about ineffective assistance of counsel. So, it was raised and litigated and squarely presented before the district court. The record was developed specifically for this purpose. So, that's why it's- Well, aren't there some fact questions still lingering as to what counsel knew and did or didn't say to your client, those sorts of things? I would say no. If you look at the record, page 977 at footnote two, that's the first trial court order on this. The trial court basically noted that it was undisputed that the trial attorney never told the defendant that there was an expiration date for the plea agreement, sorry, for the plea offer. So, really, I don't think there are any factual- Didn't the district judge, though, make a finding that there was no expiration date? It did, and that was incorrect. It's basically- Clear, clear, incorrect, you mean clear error? Well, not even, we don't think we need to get to that. The district court said that there was no explicit fixed expiration date. But FRI only requires a formal offer with a fixed expiration date, so it can be implied. We had an implicit expiration date of June 6th in this case. We've segued from whether we should hear IAC now versus later in a collateral proceeding, and we've kind of moved to your other issues. So, I mean, your position is there's no further need for the development of facts to make a determination that your client was ineffectively served by his lawyer in this proceeding. Correct, and another unique quirk of this case, we don't have to speculate, oh, would the defendant have accepted the offer? Well, we know he would've, because he actually signed it in this case. It's already a done deal. The government said it was too late, but it's all a done deal. I don't think there are any remaining factual questions. Don't we need some factual development about the issue of expiration? Whether or not, in fact, it was an expiration plea that could be expired, and whether it was implied or explicit, and you develop those facts by testimony from the attorney in question. Well, if you look at page 11 of the government's brief, they note that they agree, and it's undisputed, that June 6th was the implied date. So it's not a disputed fact here. And the record doesn't need to be developed anymore, because it's not contested. Don't we need to develop testimony from the attorney in question about various communications that he had with Mr. Buzzard? Maybe if the defendant was given an independent attorney, that record could have been developed more. So the trial attorney didn't argue any of this, because he was conflicted. Why shouldn't that happen in the ordinary course of events? With our case, Galloway, that that happens in a habeas case. I'm not familiar with Galloway, as I stated. Galloway is one that says, we don't do this on direct appeal, ineffective assistance of counsel. We wait for a further development of the record. I'm just saying the record doesn't need to be developed any further. I know you said that, but you haven't answered my question about inquiry of this lawyer in question, about what communications he had with Buzzard, and what Buzzard understood. Did Buzzard understand it was going to expire? The trial attorney fell on his sword and admitted he didn't tell the defendant about any expiration dates. But we need to know what the discussions he had with him. He had discussions about the plea bargain itself. I would argue that there were no other factual findings needed to be made with basically the bargain. Well, my understanding of what the district court was trying to do at this hearing was make a determination factually whether there was this expiration date on the five to seven years offer. And it did that with this hearing, evidentiary hearing, and it determined that there was no expiration date. And in fact, there had been an actual rejection, an explicit rejection of the settlement offer, which I believe was June, you found it was June 20th? Yeah, no, no, June 1st. There was explicit rejection of the offer, and after the explicit rejection of the offer by Mr. Buzzard, there was a counteroffer, which would certainly indicate there's no longer, I've rejected this offer, I'm giving you a new counteroffer. I mean, when you explicitly reject an offer, how can you consistently suggest it remains open? And you make a counteroffer after you explicitly reject it. I don't know, we don't know what the defendant knew on that point, I guess. Why does it matter what the defendant knew? The district court was saying, was there even an offer outstanding? And the district court said, clearly not. On this day, June 1st, the offer was explicitly rejected by the defendant. I don't remember that June 1st date. I just know that June 6th was D-Day, no pun intended, and that the defendant didn't know anything about it. And what was the testimony about June 6th? Well, if you look at page 11 of the government's brief, they're positioned below, and on appeal, that's page 11 of their brief, was that June 6th was the final day that the plea needed to be accepted. And the defendant didn't know anything about this. I mean, really, the problem is here, none of this was looked at from the defendant's. Even though the court made a finding that he'd already explicitly rejected the offer by that date. It's a little confusing what's happening here. Anything that happened after June 6th doesn't really matter from our point of view. What about before June 6th? I don't think we had any rejection of any offer before June 6th. Okay, all right, maybe I've got the timeline wrong, but I know the district court did make a finding of an explicit rejection of the offer, and a new counteroffer. I guess the overall part of this is, I just hope we're not playing word games with the Sixth Amendment in the sense that formal, informal, explicit, implied. I mean, we have to look at this from the defendant's point of view. He did not know about any expiration dates. So, when he. But that was the point. The court was trying to say, if there was no expiration date, there was nothing for him to be informed about. If there was no expiration date, we wouldn't be here. He would have pled guilty. Well, that's certainly not the case. We know that he, even after this offer was open for a couple of months, and he made many counteroffers during this time. Only in the course of normal plea bargaining, plea negotiations, because he didn't know that he had a final deadline. And you don't agree that there was a finding that he made an offer, he rejected the offer at some point? That the district court made that finding? I'm not, as I stand here, I don't recall that exactly within the time frame. All right, thank you. I'll save any other response for rebuttal. That's okay. Okay, thank you, counsel. May it please the court, Thomas Duncombe for the United States. Could you clear up Judge Moritz's timeline question? Sure, absolutely. From your perspective. And there was a finding to that effect, Judge Moritz. That was the court's written findings following the hearing were at volume one at page 1,006, and it may have been 1,006 and 1,007, but that's where you'll find those findings. Wasn't that on June 1st? And that was on June 1st, and that's also contained within the government's briefing that wasn't disputed by Mr. Buzzard below, which is volume one at 960 through 962. That's where the government laid out all those offers and counteroffers and rejections that I believe there were four counteroffers from the defense, and I think the latest one was June 1st. And that all came up at the hearing? Yes, yes. And this is all laid out, right? Yes, and there was no dispute at the hearing about the timeline. In fact, Mr. Buzzard's counsel went out of his way to say, I'm not disputing any of the timeline that Ms. Reininger for the government has laid out. We got to the hearing on June 20th. Ms. Reininger told me that March 30th offer is no longer available, and at that point is when I went to my client and said, let's try to sign it anyway and see if they'll accept it and go back to it, essentially. So what the June 1st rejection. You did that. That, I'm sorry, at what point did? That was June 20th. June 20th, okay. June 20th, so. When he went back to it and asked if he'd sign it even though it wasn't, you know. Well, he brought it to him and asked him if he would sign it, but we know from several things in the record that that wasn't the first time he had seen that March 30th offer. One of the reasons we know is the June 1st counteroffer. Unless we had a fully fleshed out hearing. I think June 1st was the actual rejection of the offer according to the district court. Yes, and I want to be, I want to make sure that we're talking about. Maybe we're talking about the same thing, maybe a counteroffer, but I got the impression from the district court it was an explicit rejection and then a counteroffer. Yes. Which is not the same thing as just making a counteroffer and expecting the offer to still be open. Well, my recollection is that it was a counteroffer, but a counteroffer rejects the initial offer. So, just by standard contract principles, that March 30th offer is only on the table to the extent the government wants to go back and revisit that, which the government can, but in this case, that June 1st counteroffer, what it shows us is it's one of many data points that shows us that the defendant knew about the March 30th offer and knew about it enough to evaluate it and make a counteroffer about it. And it also shows us that on this advanced question that the court didn't get to because it didn't have to, of would the defendant have been prejudiced if there had been a firm expiration date and he wasn't informed about it, the next question under Frye is, well, would the defendant have accepted that offer if he had known about the expiration date? And we know from several data points here that he wouldn't have accepted that offer. The only time he was willing to accept that offer was essentially when it was too late, was the court had denied the motion to dismiss, there had been another pretrial hearing denying some motions in limine that Mr. Buzzard's very conscientious and zealous counsel had brought up, and there was the June 20th hearing where all of the government's difficult to wrangle fact witnesses showed up. And Mr. Buzzard's counsel flew in from Philadelphia to view that and saw that they had all showed up, and that's the only time when Mr. Buzzard showed interest in the offer that he knew had been outstanding since March 30th. The other data point that I would point the court to are the text messages, the actual text messages between Ms. Reininger and Mr. Abreu about the offer, and those are at volume one at pages 981 and 982. And you can see Mr. Abreu uses language like, if I could have your response to the motion to dismiss in hand when I go back to talk to him, that would be an additional data point for talking to him about this offer. And he also says, I'll be talking to him more about that deal. So there's every indication from the record to the extent this court believes that the record is complete as to ineffective assistance of counsel, which we submit it's not, there's every indication from the record that Mr. Buzzard would not be able to make out the deficient performance or prejudice prongs of Strickland. Was there any testimony from his counsel at this hearing that counsel believed that because they'd been making counteroffers, counteroffers, counteroffers, each time implicitly or explicitly rejecting the offer, that that was a continuing, that that was something they could continue to do, which seems to be what you're suggesting happened here. Is this defendant believed that they could continue to make counteroffers or eventually accept because that's what they were doing and the offer was never withdrawn. So isn't that a bit contrary to what the district court found then? I mean, because it turns out there basically was an expiration date where you can't keep making these counteroffers. No, and there's a difference between the government revoking the offer and there being an expiration date. Because an expiration date, at least as the Supreme Court discussed it in Frye, is essentially, this offer's gonna automatically expire by June 1st or by June 2nd. And that's what you needed testimony on because there wasn't anything on the face of the offer itself that would indicate that one way or the other. So we're in a factual inquiry about whether there's one of those expiration dates. And in Frye, the defense attorney knew about the expiration date and blew it and didn't tell his client about the offer, let alone, hey, there's an expiration date. And now the defendant lost out on that offer. So the court found that there was no expiration date, there was a firm revocation on June 20th. The government, the actions of the government counsel and Mr. Buzzard's counsel are consistent with the findings of the district court, that they continued to act as though they were trying to work out a possible deal. I believe on June 7th at the hearing, the government told the court, we're still in the midst of negotiating. And in fact, on June 20th, when the government revoked the March 30th offer, the government said, we're going to be presenting you with a new offer. And as often happens in these cases, when the government's position improves and when the government's willingness to make a deal decreases as you get closer to trial, that deal was gonna be worse for Mr. Buzzard. It was gonna be a plea to second degree murder instead of 924-0 with a cross-reference to the manslaughter guidelines. So the, I think getting back to where we originally started, which is the ineffective assistance of counsel, I think your honors are 100% correct. Of course, we agree with this in our brief that the record is not fully developed for review of an ineffective assistance of counsel claim on direct appeal. And this court has said in a number of cases that it's not only a preference of this court to wait until collateral proceedings, but virtually all ineffective assistance of trial counsel claims. What I don't understand is, you said that in an ineffective assistance habeas claim, or 2255 claim, we would need to know about the pending plea offer. But as to its expiration or non-expiration. You said, but there's been a finding that there was no expiration date. So what, why do you need further development of that? Well, one of the things that this court has said in cases like Galloway and Flood is that you need at the very least some weighing in by defense counsel about whether if there was an act that on its face appears to have been deficient performance, was there any strategy behind that? And I think as Judge Timkovich was asking earlier, you would need to get into the nitty gritty of, you know, what did you say and what did he appear to understand based on what you said? It's not a necessarily a black and white issue of did you say X, yes. And then you would need to get into an inquiry at the district court of whether the defendant was prejudiced. And we submit that on this record, incomplete as it is on ineffective assistance of counsel, only supports that there was no prejudice to the defendant in the manner that Fry talks about. Because every indication that we have in the record is that the defendant would not have accepted this plea agreement if it had a firm expiration date of June 1st or June 2nd. But you're talking about the March deal rather than the second degree murder deal, right? Yes, and that's what I understand Mr. Buzzard to be focusing his arguments on is that March 30th plea offer. Mr. Buzzard, to my knowledge, never signed any plea offer for second degree murder. But if he claims to have done that and claims there was some ineffective assistance with regard to the June 20th second degree murder offer, then that's yet again a situation that probably even more than the March 30th offer, we would need a hearing in the first instance at the district court and fact finding. The Massaro case from the Supreme Court says that unless the record is developed precisely for the purpose of conducting an ineffective assistance of counsel. Is there a minimum mandatory on the second degree murder? Not to my knowledge, Your Honor. My understanding of second degree is that it's a maximum life, but that there's no mandatory minimum. And so you just get a guidelines range and it's capped at life, right? I believe so. And there are aggravating circumstances under the second degree murder guideline, but my understanding is unlike first degree murder, there's no mandatory sentence. Okay, thank you. Yes. And as we said in our brief, I'll just briefly touch on the right to presence claim itself, which every case that we've found from the Supreme Court and from this court has found that that is the type of claim that's subject to plain error review. It's not a structural error. Even when the defendant does have a due process right to attend the proceeding in question, you still have to preserve that. You still have to show prejudice on appeal. And that's the defendant's burden because we're on plain error review. And you need no. When would the objection have occurred? When should it have? Could have occurred at any number of places. Could have occurred when he first found out that the hearing had taken place. There was a publicly filed docket entry on July 13th after the hearing, where the court said, we held a hearing and I'm making the following findings based on this hearing. Defendant could have objected then, just as in Snyder, which was the Justice Cardozo case from 1934, where they went and viewed the crime scene. They took the whole jury out there. They took all the counsel, the bailiffs, the judge. The only one who wasn't there was the defendant. And the Supreme Court said, you could have asked for another viewing of the crime scene if you wanted. You had ample time before trial if you thought anything had been missed of substance. That didn't happen here. The defendant had ample time before trial and after that July 13th hearing to say, wait a minute, there was a hearing and I wasn't there and I was prejudiced in some way. But the only issue in that hearing where he was not present was the expiration issue. Yes, and it was information that was uniquely in the knowledge of the attorneys. And there was nothing that Mr. Buzzard could have added to that discussion on that point. And he has put it- Did Buzzard know about the hearing before it occurred? The indication from the record is he did. Because in the June- Well, what are those indications? On June, excuse me, July 10th, his counsel filed a motion for the hearing. And he said, this is at volume one at page 850, they said in that July 10th motion for hearing, Mr. Buzzard has agreed to execute a waiver of speedy trial to ensure that this inquiry gets done. So it doesn't say explicitly we've told him that we're asking for a hearing, but in order to ask him if he'd be willing to execute a waiver of speedy trial on this issue, it indicates that they talked to him about the fact that they were requesting a hearing. But the point is, even if he didn't know about the hearing before it took place, he never objected after the hearing. His counsel didn't object at the hearing. It was four days before trial, wasn't it? That sounds right. That sounds right. Not very long. Not long, but this was- We don't know any, we don't know. You're suggesting he has constructive knowledge because of the docket entry, is that what you're saying? I'm suggesting- We don't know what his counsel, what his counsel told him, whether there had even been a hearing, whether a hearing had been granted. No, but what this court said in Byerly and in Hardy is that one of the data points for finding that the defendant, that the claim was subject to plain error, and I see that I'm out of time, may I finish? One of the data points that those courts both used was the defendant didn't object to being absent and his counsel didn't object at the hearing to his absence. And so that counts for subjecting his claim to plain error, the fact that his counsel didn't object. And again, if he wants to say that his counsel, as he's argued for the first time on appeal, was ineffective for failing to object, that's something that this court would presumptively dismiss and send to the district court for a collateral proceeding in the first instance. So- Thank you, counsel. Thank you. Unless there are other questions, I'll rest on the briefs. Excuse me, I didn't hear that. Unless there are any other questions, I'll rest on the briefs. Questions? Counsel will accept your tender and counsel excused, the case is submitted.